Mrs. FRANK A. BECKER, APPELLANT, v. HARRY BRINKOP AND JOHN J. HEIL, RESPONDENTS.—78 S. W. (2d) 538.

St. Louis Court of Appeals. Opinion filed February 5, 1935.

*Earl M. Pirkey* for appellant.

*Kratky, Soffer, Nessenfeld & Cox,* for respondent Harry Brinkop.

*Karl Kimmel* for respondent John J. Heil.

874

McCULLEN, J.—This is an action for damages for libel brought by appellant, hereinafter referred to as plaintiff, against respondents, who will be referred to as defendants.

Defendants filed separate demurrers to plaintiff's amended petition on the ground that it did not state facts sufficient to constitute a cause of action. The demurrers were sustained and plaintiff refused to plead further, whereupon final judgment was entered in favor of defendants. Plaintiff appeals.

Plaintiff's amended petition alleged that plaintiff was, on August 2, 1932, and for some weeks prior thereto, a candidate for the office of republican committeewoman of the thirteenth ward of the city of St. Louis, Missouri, and that on the same date and for a number of weeks prior thereto, Mrs. Lydia Rothweiler and Mrs. Emma Engelmeier were also candidates for republican committeewoman of said ward; that on August 2, 1932, there was an election in said city at which a republican committeewoman was elected for said ward.

The amended petition further alleged that before said election and on or about July 30, 1932, the defendants wilfully, intentionally wantonly, wrongfully, unlawfully and maliciously caused to be distributed to a large number of the voters and residents of said thirteenth ward a false, defamatory and libelous printing or circular of and concerning plaintiff, as follows, to-wit:

The petition at this point contains a copy of the printed circular complained of. On the upper left hand side thereof appears the following:

"Beware of last minute attacks—they cannot be answered—therefore are cowardly."

Then follows in larger type this exhortation:

"Elect Mrs. Lydia Rothweiler candidate for Republican Committeewoman, Thirteenth Ward, unanimously endorsed by the Thir-

teenth Ward Loyal Republican Club, John J. Heil, President, Harry Brinkop.''

Following the above language, and under the heading ''THE TRUTH,'' appear the following statements:

''Lydia Rothweiler has lived and voted in the Thirteenth Ward for seven years. Lydia Rothweiler is not a candidate of any political faction. Lydia Rothweiler's husband, Fred Rothweiler has never held a political position nor have any of her relatives. Lydia Rothweiler has never had or attempted to have any city employee discharged—this is beneath her dignity. Lydia Rothweiler, unlike her opponent, has conducted a clean, dignified campaign.''

On the upper right hand side of the circular appears a cartoon showing the figure of a woman, labeled ''Mrs. Lydia Rothweiler,'' to the right of which appears another figure labeled ''Mrs. Emma Engelmeier.'' To the right of the last mentioned figure is the figure of another woman labeled ''Mrs. Frank A. Becker.'' The figures of Mrs. Emma Engelmeier and Mrs. Frank A. Becker are depicted as throwing black splotches at the figure of Mrs. Lydia Rothweiler, the black splotches being labeled ''Lies.'' Emanating from the figure representing Mrs. Emma Engelmeier appear the following words: ''If I can't win I don't want Lydia to win.'' Emanating from the figure representing Mrs. Frank A. Becker appear the following words: ''Nice cooperation Emma.'' In the foreground of the scene shown in the cartoon appears a black splotch representing a puddle of black mud labeled ''Last Minute Lies.'' Figures of two other persons appear in the scene depicted in the cartoon, but they bear no label. Underneath the above described picture or cartoon, under the heading ''Facts,'' appear the following statements:

''Lydia Rothweiler is a first time candidate for Committeewoman of the Thirteenth Ward. Mrs. Emma Engelmeier was a candidate for the Committee against Mrs. Becker four years ago. Mrs. Emma Engelmeier was a candidate for the Committee against Mrs. Becker two years ago. In both instances Mrs. Engelmeier was defeated. As a candidate against Mrs. Becker, Mrs. Engelmeier was the beneficiary of 100 per cent of the protest vote against Mrs. Becker. Therefore, it can readily be seen that a vote for Mrs. Engelmeier, a third time candidate, when there are three candidates in the field, is really a vote for Mrs. Becker. The only way to vote against Mrs. Becker is to vote for Mrs. Lydia Rothweiler.''

Following the above described circular, it was alleged that said printed article was likely to and did raise the inference and communicated to the public and the people who saw it, the ideas and statements that plaintiff was dishonest and degraded, and untruthful and unfair, and unjust and morally unprincipled and corrupt, and that plaintiff was circulating lies and untruths against Mrs.

Lydia Rothweiler so shortly before election that Mrs. Lydia Rothweiler would not have sufficient time to refute them.

It was further alleged in the amended petition that said printed article tended to and did provoke plaintiff to wrath and exposed her to public hatred and contempt and ridicule, and gossip and execration, and tended to deprive her of the benefits of public confidence and of social intercourse, and damaged plaintiff's good name and reputation, injured her standing and did humiliate her children and cause plaintiff great mental pain and suffering.

Plaintiff alleged that by reason of said false, defamatory and libelous publication, she was actually damaged in the sum of $4000; that as said publications were wilful, intentional, wanton, wrongful, unlawful, and malicious, plaintiff asked punitive damages in the sum of $3500.

Plaintiff contends that the court was in error in holding that the petition failed to state a cause of action in libel. Defendants insist that the court's action was correct for the reason that it appears that the writing complained of is not libelous *per se*, and also for the reason that no publication thereof by defendants was alleged in the petition.

The portion of the statute defining libel, with which we are concerned in this case, is as follows:

"A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation, or effigy, tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse. . . ." [Sec. 4366, R. S. Mo. 1929 (Mo. Stat. Ann., sec. 4366, p. 3024.)]

The above section is found in our statutes defining crimes, but it has been held by our Supreme Court to apply also to civil cases. [Heller v. Pulitzer Pub. Co., 153 Mo. 205, 214, 54 S. W. 457; Sotham v. Telegram Co., 239 Mo. 606, 619, 144 S. W. 428.]

In McCloskey v. Pulitzer Publishing Co., 152 Mo. 339, 345, 53 S. W. 1087, our Supreme Court gave its approval to an instruction which defined libel in the words of the above statute, and told the jury that,

"If, therefore, you find and believe from the evidence that the article admitted to have been published by the defendant corporation of and concerning the plaintiff had a tendency to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse, then the article in question is libelous under the statute."

Textwriters on the subject of libel declare that it is actionable to charge a person in a writing with being a liar. [Townsend on Slander and Libel (4 Ed.), p. 207, sec. 177, line 2.]

In Gately on Libel and Slander (1924 Ed.), pp. 21, 22, it is said that "it is libelous to write and publish of a man that he is a . . . liar . . ."

In Newell on Slander and Libel (4 Ed.), p. 14, par. 31, the statement is made that to publish of a man that he is a liar is libelous. Each of the textwriters referred to cites cases from various sources to support the declarations of law thus presented.

Defendants cite cases relating to slander and contend that such cases sustain their contention that it is not libelous *per se* to call a person a liar unless the crime of perjury is charged. It is sufficient to say as to these slander cases that they are not in point in a libel case such as this case, because "many things are libelous *per se* when put in writing and published that are not slanderous *per se,* or at all, when spoken by word of mouth. The kernel of the matter in these subtle distinctions lies in the axiom: The spoken word flies; the written letter remains." [Orchard v. Printing Co., 240 Mo. 575, 591, 592, 144 S. W. 812. See also Furlong v. German American Press Assn. (Mo.), 189 S. W. 385, 388.]

In Riley v. Lee, a Kentucky case, many cases are collected from various states in which the distinction between the rules applicable to libel and those applicable in actions for slander are set forth. After a review of such authorities the court in that case said:

"So it may be regarded as thoroughly settled that if the written or printed publication tends to degrade the person about whom it is written or printed,—that this, if it tends to reduce his character or reputation in the estimation of his friends or acquaintances or the public from a higher to a lower grade, or if it tends to disgrace him, —that is, if it tends to deprive him of the favor and esteem of his friends or acquaintances or the public, or tends to render him odious, ridiculous, or contemptible in the estimation of his friends or acquaintances or the public,—it is, *per se,* actionable libel.

"Accordingly, to publish any writing or printing of a person that he is guilty of falsehood, is libelous." [Riley v. Lee, 88 Ky. 603, 21 Am. St. Rep. 358, 361.]

In the above Riley case the petition charged the owners and publishers of a newspaper with having published, for the purpose of defaming the appellant, a writing which was false and known to the publishers to be false, as follows:

"Whereas, O. V. Riley did make representations to me that it would be impossible for my sister, Bettie Threlkeld, to secure the position of teacher of the school in the Cedar Hill district, when, at the very time that he made this assertion, a bona fide contract with the trustees of said school had been made, in which she was positively engaged to teach said school; and whereas the disappointment occasioned by this misrepresentation of his caused my sister's mind to be

sorely troubled during her late illness, causing her to despair, and assisting the ravages of disease to undermine her constitution, and further considering the fact that his sister had applied for the same school,—I regard this conduct in him as uncalled for, ungentlemanly, and detestable as his statement was fallacious.

"(Signed)  A. E. THRELKELD, M. D."

In a carefully considered opinion, the court in that case held that the action of the trial court in sustaining a demurrer to the petition was erroneous. The court in its opinion, referring to the libelous card, said:

"In this case the substance of the card is, that the appellant, for the purpose of aiding his sister to procure the situation of teacher in the Cedar Hill district school,—Miss Bettie Threlkeld being an applicant for the same position,—uttered a falsehood in the interest of his sister, which card, according to the principles just discussed, is clearly libelous *per se.*

"It is charged that this card was maliciously published, etc. Malice, in a case of this kind, consists in intentionally publishing, without justifiable cause, any written or printed matter which is injurious to the character of another; and everything written and published of another that is injurious to his character must, for the purposes of the action, be taken to be false, until it is shown by plea and proof to be true; and the presumption of malice remains through the entire case, until it is met by plea and proof of a contrary motive, or that the publication was justifiable." [Riley v. Lee, supra.]

We have not been able to find in this State any decision determining whether or not it is libelous *per se* to publish a printed circular containing a picture such as we have before us in this case, wherein there is attributed to a person the character of a liar. We find, however, that our Supreme Court has laid down a rule which we believe is applicable, and furnishes a test by which we may determine whether or not the writing complained of in the case at bar is libelous *per se.*

In Seested v. Post Printing & Publishing Co., 326 Mo. 559, 573, 31 S. W. (2d) 1045, 1051, the court quoted with approval the following from Dusabek v. Martz, 121 Okla. 241, 249 Pac. 145, 146, 147, 49 A. L. R. 253:

"As to whether the article is libelous *per se,* we must consider in our determination only the thought, idea, impression, or opinion conveyed to the reader by the publication, everything appearing in the article, be it in inference, insinuation, irony, ridicule, sarcasm, the friendly or unfriendly tone, its arrangement, form, and style. The court for such purpose becomes the lay person to whom it is addressed, and in arriving at the meaning everything appearing in or from the article which, unaided by extrinsic facts or circumstances, has a natural tendency to change, color, or formulate its meaning, must be

considered. . . . The publication cannot be measured by its effect when subjected to the critical analysis of a trained. legal mind; it must be measured by its natural and probable effect upon the mind of the average lay reader."

In the Seested case, from which the above quotation is taken, the Supreme Court also declared that any language fairly included in the definition of libel contained in our libel statute, now section 4366, Revised Statutes of Missouri 1929 (Mo. Stat. Ann., sec. 4366, p. 3024), is libelous *per se*.

In the same case, the court, in defining "defamation," quoted with approval the following from Diener v. Publishing Co., 232 Mo. 416, 433, 135 S. W. 6, 11:

"Defamation (in the sense used in the definition) includes the idea of calumny, aspersion by lying; the injury of another's reputation in that way." [Seested v. Post Printing & Publishing Co., 326 Mo. 559, 575, 31 S. W. (2d) 1045, 1052.]

Applying the tests provided in the above Seested case, and having in mind the declarations of the textwriters heretofore referred to, as well as the definition of libel contained in our statute, we are of the opinion that the writing involved herein was libelous *per se*. It clearly conveyed in the cartoon portion thereof, when taken in combination with the statements appearing therein, and in the entire circular, the thought that plaintiff was a liar and that she was engaged in promulgating last minute lies in cooperation with others against Mrs. Lydia Rothweiler, who was a candidate against plaintiff as well as against Mrs. Emma Engelmeier in a contest for republican committeewoman of the thirteenth ward. The circular plainly shows plaintiff as one engaged in besmearing and besmirching with lies one of her opponents in the political contest described therein.

The matter in the circular itself, when considered as a whole, does not require the aid of *innuendo* to make its meaning clear, and if that matter is false, as plaintiff's petition alleges it is, then it undoubtedly is defamatory of plaintiff. When read as a whole, the circular engenders in the mind of the reader the impression, and conveys the thought, that plaintiff is a liar and is dealing in lies, and last minute lies in a political campaign. There can be no doubt that such charges against plaintiff, if they are false, as she alleges they are, and if they were made intentionally, wilfully and maliciously, as she charges they were, had a tendency to provoke her to wrath and to deprive her of the benefits of public confidence and social intercourse, as well as to hold her up to public contempt and ridicule.

It now remains for us to determine whether or not there was a sufficient allegation in the petition of publication of the circular by defendants.

On this phase of the case we are not so much concerned with precedents and authorities as we are with the meaning of the words used in the amended petition to charge a publication of the libelous circular.

Publication of a libel has been variously defined in numerous cases and by many textwriters.

In Odgers on Libel and Slander (6 Ed.), p. 131, it is said:

"Publication is the communication of the defamatory words to some person or persons other than the person defamed."

If there was no publication of the libelous matter by the defendants within the legal meaning of the word "publication," then there can be no liability on defendants. To make defendants liable for the publication of the libelous circular, it must appear that defendants were aware that the circular was, or probably might be, libelous; also that they delivered it, or caused it to be delivered, to some third person, and that the third person read it, or saw it, and understood its contents. These elements must appear for the reason that if defendants could prove that they were wholly ignorant of the contents of the circular and had no reason to suppose that it contained libelous matter, they could not be held liable for it because it could not then be said that they had consciously published a libel. Furthermore, if the person or persons to whom defendants delivered it never read it nor heard it read, and never understood it, the reputation of the plaintiff could not be said to have been injured in any way thereby. [Odgers on Libel and Slander (6 Ed.), p. 132.]

Our statute declares that no printing or writing is a libel unless there has been

"A publication thereof, by delivering, selling, reading, or otherwise communicating the same or causing the same to be delivered, sold, read, or otherwise communicated to one or more persons or to the party libeled. . . ." [Sec. 4368, R. S. Mo. 1929 (Mo. Stat. Ann., sec. 4368, p. 3026.)]

Plaintiff's amended petition in the case at bar alleged that the circular in question "*communicated* to the public and the people who saw it the ideas and statements that plaintiff was dishonest and degraded, and untruthful and unfair, and unjust and morally unprincipled and corrupt, and that plaintiff was circulating lies and untruths against Mrs. Lydia Rothweiler, etc." (Emphasis ours.)

Defendants argue that normally a petition in libel states that defendant "published of and concerning the plaintiff" the writing complained of; that the term "published" is a term of art and has an accepted meaning in the law; that it conveys the idea that the defamatory matter was *communicated* to some person or persons, meaning that such matter was read or seen and understood by some person or persons. In this connection it is pointed out by defendants that

the words used by plaintiff in the case at bar "caused to be distributed" have no such accepted meaning. It is further contended by defendants that even if plaintiff did not use the word "published," it was necessary that some allegation should appear in the petition to convey the same idea, namely that defendants communicated or caused to be communicated the defamatory language to some third person or persons.

We are of the opinion that a reading of the amended petition discloses that plaintiff has presented in her petition the very allegations which defendants say are not present therein, for it is plainly alleged that the circular complained of *"communicated* to the public and the people who saw it the ideas and statements that plaintiff was dishonest and degraded and untruthful, etc."

It is true the amended petition does not in precise terms allege that the persons to whom defendants caused the circular to be distributed read and understood it, but we believe it nevertheless does present allgations which are unquestionably equivalent to such an allegation and have the same meaning.

The use of the word "published" was not necessary in view of the language used by the pleader, which, in legal effect, amounted to the same thing. The use of the word "communicated" is an allegation of the ultimate fact which constitutes the essential element of publication, and when considered in connection with the allegation that the libelous circular was distributed to a large number of persons, the legal requirements as to publication have been complied with. We are unable to see how the circular in question could be said to have "communicated" to the public and to the residents of the Thirteenth Ward the ideas and statements referred to unless those persons read it. If the ideas and statements referred to were "communicated," they were imparted and made known to such persons. Furthermore, it is to be noted that the petition alleges that "said *publication* tended to and did greatly damage plaintiff's good name, etc.," and it further alleges "that by reason of said false, defamatory and libelous *publication* plaintiff has been actually damaged by said *publication,* etc.," and also further charges "that as said *publications* were wilful, intentional, etc."

It thus appears that the petition contains all the elements necessary to state a cause of action in libel under our statute, and we are of the opinion that the court erred in sustaining the demurrer of defendants. The judgment is, therefore, reversed and the cause is remanded for further proceedings not inconsistent with the views expressed in this opinion. *Hostetter, P. J.,* and *Becker, J.,* concur.