## HOUSTON POST CO. v. UNITED STATES et al.

### Civ. No. 4367.

District Court, S. D. Texas, Houston Division.

Aug. 3, 1948.

Butler, Binion, Rice & Cook and Jack Binion, all of Houston, Tex., and Case & Wozencraft and Frank W. Wozencraft, all of Washington, D. C., for plaintiff.

Brian S. Odem, U. S. Atty., of Houston, Tex., Tom Clark, Atty. Gen., Herbert A. Bergson, Asst. Atty. Gen., and William D. McFarlane, Sp. Asst. to the Atty. Gen., for the United States.

Benedict P. Cottone, Gen. Counsel, Max Goldman, Acting Asst. Gen. Counsel, and Richard A. Solomon, all of Washington, D. C., for Federal Communications Commission.

Price Daniel, Atty. Gen., of Texas, and C. K. Richards, Asst. Atty. Gen., for the State of Texas, amicus curiae.

Don Petty, of Washington, D. C., for the Nat. Assn. of Broadcasters, amicus curiae.

Before HUTCHESON, Circuit Judge, and KENNERLY and HANNAY, District Judges.

HUTCHESON, Circuit Judge.

Plaintiff, under license issued by the Federal Communications Commission, is, and for many years has been, owner of "Radio Station KPRC", a long established, highly regarded, and valuable property in Houston, Texas. As such owner, it brings this suit under Section 402(a)[1] of the Communications Act of 1934, to annul the interpretation or opinion of the Commission as to the meaning and effect of Section 315[2]

---

[1] "Sec. 402(a) The provisions of the Act of Oct. 22, 1913 (38 Stat. 219), relating to the enforcing of setting aside of the orders of the Interstate Commerce Commission, are hereby made applicable to suits to enforce, enjoin, set aside, annul, or suspend any order of the Commission under this Act (except any order of the Commission granting or refusing an application for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license, or suspending a radio operator's license), and such suits are hereby authorized to be brought as provided in that Act." 47 U.S.C.A. § 402(a).

[2] "Sec. 315. If any licensee shall permit any person who is a legally qualified candidate for any public office to use a broadcasting station, he shall afford equal opportunities to all other such candidates for that office in the use of such broad-

200

of the Act, the Political Broadcast Section, and to enjoin its enforcement.

Plaintiff alleges that this interpretation or opinion, announced by the Commission in the course of deciding In re Application of Port Huron Broadcasting Company, Docket No. 6987, in effect declares that the censorship forbidden by Section 315 is absolute and extends to censoring for libelous or slanderous matter.[3]

The petition further alleges: that plaintiff has an established policy of extending its broadcasting facilities to candidates; that various heated political campaigns are now being carried on; that, under the laws of Texas, plaintiff will be held liable if it permits libelous matter to go out over its facilities; and that the Commission's action, if not annulled and restrained, will compel plaintiff to choose between the danger, on the one hand, of losing its license if it does not comply with the Commission's opinion, and, on the other, of being sued for libel if it does.

Defendants having appeared by motion to dismiss and by answer, the National Association of Broadcasters and the State of Texas having filed briefs amici curiae

and a three judge court having been properly convened, the motion to dismiss was fully argued and submitted. Whereupon, the court, after consultation, announced that ruling on the motion to dismiss would be deferred until after the trial on the merits so that if the court concluded that it had jurisdiction, it could enter a final judgment in the case and if it concluded that it had not, the record would be complete for an appeal.

The facts, admitted in the answer, stipulated on the trial, or briefly proven, came in without substantial conflict, the oral arguments were soon completed, and the case stood submitted on full briefs on both questions argued.

Of the opinion that the issues were in substance in small compass, and that with the great aid afforded by the full briefs, some filed in advance of the hearing, the matters for determination should, and could, be promptly decided, the court proceeded at once to a determination of the question of jurisdiction which underlies the case.

So proceeding, it at once became apparent: that the right of plaintiff to

---

casting station, and the Commission shall make rules and regulations to carry this provision into effect: Provided, That such licensee shall have no power or censorship over the material broadcast under the provisions of this section. No obligation is hereby imposed upon any licensee to allow the use of its station by any such candidate." 47 U.S.C.A. § 315.

[3] In its petition, this is the way plaintiff states it:

"On the 28th day of June, A.D., 1948, defendant FCC rendered its ruling and final decision in Port Huron Broadcasting Company (WHLS), Docket No. 6987, File No. B2-R-976. A copy of said opinion is attached hereto and marked Exhibit 'A'.

"Among other things contained in the defendant FCC's decision in the Port Huron case is the following: 'Accordingly, we are of the opinion that the prohibition of Section 315 against any censorship by licensees of political speeches by candidates for office is absolute, and no exception exists in the case of material which is either libelous or might tend to involve the station in an action for damages. In reaching this conclusion, we hold that the censorship prohibited under Section 315 of the Communications Act includes the refusal to

broadcast a speech or part of a speech by a candidate for public office because of the allegedly libelous or slanderous content of the speech.' "

This is the way its brief states its complaint:

"The portion of the 'Port Huron Decision' embodying the declaratory order complained of is found on page 5 of Exhibit 'A', and reads as follows: 'Accordingly, we are of the opinion that the prohibition of Section 315 against any censorship by licensees of political speeches by candidates for office is absolute, and no exception exists in the case of material which is either libelous or might tend to involve the station in an action for damages. In reaching this conclusion, however, we hold merely that the censorship prohibited under Section 315 of the Communications Act includes the refusal to broadcast a speech or part of a speech by a candidate for public office because of the allegedly libelous or slanderous content of the speech. Nothing in this opinion is intended to indicate that a licensee is necessarily without power to prevent the broadcast of statements or utterances in violation of the Communications Act or any other federal law on broadcasting coming within the requirements of Section 315 of the Communications Act.' "

maintain the suit depends upon its being in fact and in law a suit to enjoin, set aside, or annul "an order" of the commission within the meaning and contemplation of Sec. 402(a); and that the burden rests heavily upon it to show that what is in appearance a mere discussion of the meaning and effect of Sec. 315, indulged in by the Commission not in but while deciding the case before it, is in law and in fact such an order.

Plaintiff fully recognizes this as its burden, and with earnestness and vigor presses upon us that though in form a quasi judicial opinion, the interpretation complained of was intended to be, and is in fact, an order promulgating a rule or regulation which all radio stations, including plaintiff, must at their peril obey. Putting forward Columbia Broadcasting System v. U. S., 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563, as authority for its position, plaintiff points, as giving full support to it, to the language of Mr. Chief Justice Stone in that case, 316 U.S. at page 416, 62 S.Ct. at page 1200, 86 L.Ed. 1563: "The particular label placed upon it by the Commission is not necessarily conclusive, for it is the substance of what the Commission has purported to do and has done which is decisive. Powell v. U. S., 300 U.S. 276; 284, 285, 57 S.Ct. 470, 474, 475, 81 L.Ed. 643; A. F. of L. v. Labor Board, 308 U.S. 401, 408, 60 S.Ct. 300, 303, 84 L.Ed. 347."

We cannot agree. The Columbia Broadcasting Company case aside, we think it perfectly plain that if the words of Sec. 402(a) are accorded the meaning ordinarily given such words in such a context, the rules of right reasoning do not permit of the view that the opinion complained of is a reviewable order under the section.[4] Indeed, we think it clear that but for the comfort the Columbia Broadcasting case gives, plaintiff would not be here.

If then we give that case the fullest reach to which it is entitled, is there any-thing in it which lends support to plaintiff's view? We think not. That case is a different case in fact from the one presented here, and nothing said in the opinion, supports the contention here made. As appears from the summary in headnote 2 of the Columbia case, the regulations there complained of were promulgated by order of the Commission in the exercise of its rule making power to govern its policy and action in the licensing of broadcasting stations, and they provided that there should be no renewal of licenses of stations whose contracts contained provisions proscribed by the Commission.[5]

The differences of opinion manifested, the arguments and discussions indulged in, in that case were not over whether the regulations complained of were promulgated by "order". They were admittedly so promulgated. It was over whether they and the order promulgating them, which was not directed to plaintiffs, had such impact upon plaintiffs as would give them a right to a review of it under Sec. 402(a), or whether before applying for judicial relief they must wait action by the Commission enforcing the regulation against them. In short, the question there was whether the action for relief against the order was premature, not whether the regulations complained of were orders of the Commission. Pointing out that the order was not within any of the exceptions in Sec. 402(a) and that the assailed regulations prescribed rules which governed the contractual relations between the stations and the networks, the court, 316 U.S. at page 418, 62 S.Ct. 1200, 86 L.Ed. 1563 said: "The regulations are rules which in proceedings before the Commission require it to reject and authorize it to cancel licenses on the grounds specified in the regulations without more. If the regulations are valid they alter the status of appellant's contracts and thus determine their validity in advance of such proceedings."

[4] United States v. Los Angeles & S. L. R. Co., 273 U.S., 299, 47 S.Ct. 413, 71 L.Ed. 651; Rochester Tel. Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147.

[5] Said the court, 316 U.S. at page 417, 62 S.Ct. 1200, 86 L.Ed. 1563: "The order is thus in its genesis and on its face, and in its practical operation, an order promulgating regulations which operate to control such contractual relationships, and it was adopted by the Commission in the avowed exercise of its rule-making power."

Then drawing the distinction between a rule or order having the force of law and a mere opinion as to what the law is, the court goes on to say:

"Most rules of conduct having the force of law are not self-executing but require judicial or administrative action to impose their sanctions with respect to particular individuals. *Unlike an administrative order or a court judgment, adjudicating the rights of individuals, which is binding only on the parties to the particular proceeding, a valid exercise of the rule-making power is addressed to and mete a standard of conduct for all to whom its terms apply. It operates as such in advance of the imposition of sanctions upon any particular individual.* * * *

"*Such regulations have the force of law before their sanctions are invoked as well as after.* When, as here, they are promulgated by order of the Commission and the expected conformity to them causes injury cognizable by a court of equity, they are appropriately the subject of attack under the provisions of § 402(a)". (Emphasis supplied).

In the opinion of the District Court in that case, 44 F.Supp. page 688, the court at page 691 said: "So far as we have found, the Supreme Court has never declared that that statute authorizes review of any decision of an administrative tribunal which neither directs anyone to do anything, nor finally adjudicates a fact to exist upon which some right or duty immediately depends. * * * it is enough if it authoritatively determines the existence of a fact that at once sets in execution some sanction, though the decision itself be not in form a command."

We think it plain that the crux of this case lies here. The determination whether the complained of interpretation of the Commission is, or is intended to be, a mere expression of opinion which "neither directs anyone to do anything, nor finally adjudicates a fact to exist upon which some right or duty immediately depends", or whether it is, or is intended to be, an oblique regulation, that is an authoritative determination of "the existence of a fact that at once sets in execution some sanc-

tion, though the decision itself be not in form a command". Because this is so, the court, as a test of the position of the Commission, carefully interrogated counsel for it as to the real, the actual position and contention of the Commission.

Among other things, counsel was asked: "Does the Commission consider or contend that its interpretation of the meaning and effect of Sec. 315 has added anything to the obligations which Sec. 315 imposes on radio stations, that is, has it imposed obligations or merely given its opinion as to what the already imposed obligations are?"; "Has the Commission by the complained of opinion established a standard to which all radio licensees must conform under penalty of sanctions, or has it merely stated as its opinion that Section 315 has already established the standard and required conformity thereto?"

To these queries, the Commission, through its counsel, gave positive and uniform answer: that the Commission has not intended to, and has not, by the opinion complained of, imposed any regulation or rule, it has merely given its view as to the obligation Sec. 315 itself imposes; that the Commission makes no claim that its interpretation of the statute has the force of law, the Commission merely gave its opinion as to what the law requires; and that it did not intend to, nor did it, by giving expression as to its opinion as to, add anything either of substance or of sanction to, the law.

We so construe the meaning, the nature, and the effect of the Commission's opinion. We think it susceptible of no other reasonable construction. That plaintiff, under the apprehension that failure to conform to this expression of opinion will bring disagreeable results, takes the complained of expressions to be intended as, and to be, the laying down of a rule or regulation "which sets in execution some sanction", is made quite clear by its proof that, though plaintiff differs with the opinion the Commission has expressed, it has chosen the dangers of conforming to those of not conforming to it. But this, while conclusive of the complete good faith of plaintiff's suit, is without significance upon the question of whether the opinion which has

so disturbed and moved plaintiff was, within the meaning of Sec. 402(a), an order of regulation to which, upon the penalty of sanctions for failure to do so, it was bound to conform.

We are in no doubt that it was not intended to be, it is not such an order. Our conclusion that it is not finds ample support in the form and context of the pronouncement considered entirely apart from the merits of the case. It finds convincing, indeed conclusive, reinforcement when the merits are inquired into, not to decide them, but for their bearing upon, their support of, the conclusion we have reached. This bearing and support become at once apparent when plaintiff's claim, that the Commission's opinion is not the mere expression of its view as to the state of the law but an order with sanctions promulgating a rule of conduct, is examined in the light of the subject matter the opinion deals with.

This subject matter in general is the reach and the confines, respectively, of state and federal laws operating in the same general field, a question of the greatest difficulty and delicacy, as the discussions and the authorities cited in Cloverleaf Butter Co. v. Patterson, 5 Cir., 116 F.2d 227, and in the majority and dissenting opinions in 315 U.S. 148,[5] 62 S.Ct. 491, 86 L.Ed. 754, show. In particular, it is whether, by providing in Sec. 315, "such license shall have no power of censorship over the material broadcast under the provisions of this section", Congress intended to, and did prohibit censorship for libel, and, prohibiting it, gave the broadcast immunity from libel suits, thereby entering into and occupying the whole field of rights and obligations inhering in and arising out of political radio broadcasts and excluding state laws of libel therefrom.

If the Supreme Court of the United States had authoritatively so construed Section 315; if, short of this there were a body of decisions uniformly so construing it; if, in general, prohibitions against censorship had been uniformly construed as precluding the control of language, which is beyond the scope of guarantees of free speech; or if the legislative history of the section clearly showed the path of the law to be that that which the Commission, in its opinion, has taken; there might be some basis for the claim that, though in form a mere opinion as to the meaning of the section, the pronouncement was in fact and in law intended to be, and was, an order laying down a positive rule of law.

When, however, it appears: that the Supreme Court has not construed the section;[6] that there is no body of judicial opinion interpreting it as the Commission has done, but such opinion as there is is directly to the contrary,[7] and that prohibitions against censorship have been uniformly held not to prevent the control of language which is beyond the scope of guarantees of free speech,[8] the view that

---

[5] Cf. Penn. Dairies v. Milk Control, 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748; Hill v. Florida, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782. "It is often a perplexing question whether Congress has precluded state action or by the choice of selective regulatory measures has left the police power of the States undisturbed except as the state and federal regulations collide." Rice v. Santa Fe, 331 U.S. 218 at 230, 67 S.Ct. 1146 at page 1152, 91 L.Ed. 1447.

[6] In K. F. A. B. Broadcasting Co. v. Sorensen, 290 U.S. 599, 600, 54 S.Ct. 209, 78 L.Ed. 527, the Supreme Court, on the ground that the judgment was based upon a non-federal ground, declined to review Sorensen v. Wood, 123 Neb. 348, 243 N.W. 82, 82 A.L.R. 1098, which had held that the section did not preclude state libel laws.

[7] Sorensen v. Wood, 123 Neb. 348, 243 N.W. 82, 82 A.L.R. 1098 and note; Coffey v. Midland Broadcasting Co., D. C., 8 F.Supp. 889; Irwin v. Ashhurst, 158 Or. 61, 74 P.2d 1127; Singler v. Journal Co., 218 Wis. 263, 260 N.W. 431; Miles v. Wasmer, 172 Wash. 466, 20 P.2d 847; McDonald v. Polk, 346 Mo. 615, 142 S.W.2d 635; Holden v. Am. News Co., D. C., 52 F.Supp. 24.

[8] 52 Am.Jur., Theaters, Shows, etc., Censorship Secs. 38, 39 and 40, pp. 282–285; Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357; Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031; N.L.R.B. v. Va. Elec. & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348; Federal Trade Commission v. Standard, 2 Cir., 86 F.2d 692, 693.

the Commission was issuing an order and not merely giving an opinion seems quite unfounded. Said the Supreme Court, in Chaplinsky v. New Hampshire, 315 U.S. 568, at page 571, 62 S.Ct. 766, at page 769, 86 L.Ed. 1031: "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and mortality. 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.' Cantwell v. Connecticut, 310 U.S., 296, 309, 310, 60 S.Ct. 900, 906, 84 L.Ed. 1213, 128 A.L.R. 1352."

When further it appears from the consistent legislative history of the Communications Act not that Congress has, but that it has not, given any clear indication that in using the word "censorship" in Sec. 315, it intended to give it the meaning and effect accorded to it by the Commission's interpretation, the contention that the expression of the Commission's opinion on such a controversial and difficult matter was intended to be and was an order reviewable under Sec. 402(a) seems far fetched. Indeed, in the uncertain and doubtful state of the law as to the intent of Congress, in enacting the section to exclude the operation of libel laws, we think it judicially inconceivable that the Commission, a body of public servants entrusted by Congress with powers of supervision over communications by radio, could, with considerations of fair play and just administration in mind, have so ordered.

In the present state of the law, that is in the absence of congressional action clarifying its intent and purpose, or of authoritative judicial decision, we think it doubtful that the Commission would have power to lay down a binding rule or regulation of the nature of that expressed in its opinion. For, having no power to protect station owners, who comply with the order, if it should be determined that the Commission's guess as to the law was wrong, it ought not to be held to have the power to subject the owner under sanctions to the hazards of its wrong guessing.

We are not, however, called upon to determine here the power of the Commission to make such an order. In determining the nature and character of the Commission's action we must assume that it did not intend to act either beyond its powers or unjustly and unreasonably, and unless compelled to find otherwise, we must find that it did not so intend. With this guiding principle in mind, we have no difficulty in determining that all that the Commission intended to do, or did, was to take the opportunity afforded by its decision in the Port Huron case to support in the form of a considered opinion the view it had been trying to get Congress to enact into law, that radio stations ought to be, and are, exempt, from libel laws in connection with political broadcasts and ought not to be, and are not, permitted to censor them for libel.

Whether the Congress, in using the word "censorship" intended to go as far as the Commission declares it did to at once prohibit censorship for libel and grant broadcasters immunity from libel, or whether it did not so intend, is not for us to decide. It is sufficient for us to say that we are convinced that the attacked language of the Commission is not an order, that the petition presents nothing for our cognizance, that the court is without jurisdiction of the cause under Sec. 402(a), and that the suit must be, and it is hereby, dismissed.