N. Murry Edwards, Appellant, v. Albert G. Nulsen, Sr., Respondent. No. 37107.

N. Murry Edwards, Plaintiff, v. Albert G. Nulsen, Sr., et al., Defendants, R. L. Polk & Company, a Corporation, Appellant. No. 37108.—152 S. W. (2d) 28.

Division Two, June 10, 1941.*

*NOTE: Opinion filed at September Term, 1940, April 3, 1941; motion for rehearing or to transfer to Court en Banc filed; motion overruled at May Term, 1941, June 10, 1941.

1078

*Douglas H. Jones* for N. Murry Edwards.

*Clem F. Storckman* and *Everett H. Wells* for R. L. Polk & Company.

*Orla M. Hill* for Albert G. Nulsen.

*Hennings, Green, Henry & Evans* for James P. Jackson, *amicus curiae.*

WESTHUES, C.—Plaintiff Edwards filed suit to recover damages alleged to have been sustained through the publication of a libelous article. The defendants were: R. L. Polk & Company, a Corporation; Norman L. Nulsen; Albert G. Nulsen, Jr., and Albert G. Nulsen, Sr. Defendant Norman L. Nulsen died prior to the trial and the case was abated as to him. A demurrer to the evidence was sustained as to the defendant Albert G. Nulsen, Jr. A jury returned a verdict in plaintiff's favor, against R. L. Polk & Company, in the sum of one dollar as actual damages, and $25,000 punitive damages. From that judgment Polk & Company appealed. That is case number 37108 on our docket. The jury returned a verdict in favor of the defendant Albert G. Nulsen, Sr., and from the judgment in his favor plaintiff, Murry Edwards, appealed. That is case number 37107. While they were separate appeals, and each case was briefed in this court, they were consolidated here and will be disposed of in one opinion.

We will first consider the issues in case number 37108, where plaintiff Edwards is the respondent. The article complained of was prepared by Norman L. Nulsen. It was in the form of a four page pamphlet and, through the facilities of the defendant R. L. Polk & Company, was mailed to a large number of lawyers, business men and business corporations. Major Thomas F. McDonald, a lawyer of high standing living in the city of St. Louis, was the principal target of the libel. He obtained a judgment in the sum of $9000 as actual damages against Polk & Company. That judgment was affirmed by this court in the case of McDonald v. R. L. Polk & Co., 346 Mo. 615, 142 S. W. (2d) 635. We will not restate the libelous matter here, but refer the reader to the opinion in the McDonald case. The article alleged in substance that McDonald had been guilty of murder, blackmail, extortion and gross hypocrisy, and had colluded with plaintiff Murry Edwards in an extortion plot. It is difficult to conceive a more vicious and defamatory libel. That it was libelous *per se* was conceded. It was also conceded that it was false in its entirety. Appellant's present contention is that its demurrer, offered at the close of all the evidence, should have been sustained. This point was ruled against appellant in the McDonald case. Appellant earnestly insists that the opinion in the McDonald case does not conform to the established law. We will therefore state the facts surrounding the publication of the libel rather in detail and will

1082

give the question of appellant's liability further consideration. The conceded facts leading to the publication of the libel were about as follows: Plaintiff, Murry Edwards, represented the former wife of Norman L. Nulsen in a proceeding to collect a judgment of alimony in the sum of $20,000, which had been rendered against Nulsen at the time the wife obtained a divorce from Norman in the year 1934. Norman had pledged stock, which he owned in a corporation, to his father to secure the payment of an alleged debt. Edwards brought a proceeding against the father to subject this stock to the payment of the alimony judgment. The father, Albert G. Nulsen, Sr., had employed a number of attorneys to represent him in this litigation, but owing to the conduct of Norman L. and his interference, these attorneys withdrew from the case. Finally the father engaged McDonald, who remained in the case until a settlement of the judgment was had through plaintiff Edwards. This occurred in the early part of 1936. Norman evidently became highly incensed over the litigation and in March, 1936, attempted to publish a pamphlet similar to the one here in question. A printing company, engaged to print the circular, notified McDonald thereof, whereupon McDonald immediately notified his client, the father of Norman, and through his efforts and the refusal of the printing company to print the circular, Norman's nefarious scheme to defame the character of McDonald and the plaintiff, Edwards, was successfully frustrated. Norman L. made further attempts to have the pamphlet he had prepared published, but a number of printing companies refused to do the work. Through the efforts of the family, principally the father, Norman was prevented from publishing the libel at that time. Norman was evidently then a bankrupt. His father was advancing him about $200 per month for living expenses. On the advice of McDonald this allowance was reduced to $150, with a view that Norman would not then have sufficient funds to finance the publication of the libel. All went well until the following August. The father was at that time in the State of Michigan. Norman went to him and asked for and obtained the sum of $500, on the pretext that he was leaving St. Louis permanently and going to Washington for the purpose of seeking employment. Norman evidently immediately returned to St. Louis and had the libelous matter printed by a printer whose identity he was able to keep secret. There remained the task of distributing the pamphlet. This was accomplished through the facilities of Polk & Company. Polk & Company has offices in practically all of the large cities of the United States. It has a compiled and assembled classified list of names and addresses of persons, business firms and corporations, professional men and public officials located throughout the United States. Through its facilities business concerns send advertising matter to a particular class of citizens especially interested in the matter to be advertised. Polk & Company has an office force

through which it is prepared to address envelopes, place advertising matter therein and attend to the mailing thereof. Owing to its efficiency and the information which it has compiled, the company has been of valuable service at a reasonable rate to legitimate business advertising. Through the facilities of Polk & Company any particular class of citizens can be reached and served with information very effectively. In the year 1936, and prior thereto, Polk & Company had in its possession upwards of thirty thousand envelopes belonging to Norman L. Nulsen. These envelopes were kept by the company for the purpose of sending through the mail matters furnished by Norman. About August 19, 1936, Norman went to defendant Polk & Company and ordered what the manager of Polk & Company called a "tailor made" list of names, which included lawyers, judges, business concerns and officials. The list totaled nearly ten thousand names. A day or so later Norman Nulsen furnished defendant with ten thousand of the circulars containing the libelous matter, and the defendant company immediately mailed them to the persons and corporations contained in the "tailor made" list. A copy of the circular was attached to the order given to the defendant company and filed in its records by the lady in charge of the office.

Appellant in its brief states its position as follows:

"To hold defendant responsible for the publication of a libelous circular not composed, written or printed by, but merely transmitted by such defendant, it must appear that the defendant knew what the contents of the circular was or was aware that the circular might contain libelous matter."

That same contention was made in the McDonald case. After reviewing the question, this court, Division One, in McDonald v. R. L. Polk & Co., 346 Mo. 615, 142 S. W. (2d) 635, l. c. 640 (2, 3), said:

"In view of the fact that the circular here involved was clearly libelous *per se*, and in view of the service rendered by defendant, considered in connection with its extensive and far flung advertising facilities, we think that defendant's liability should be governed by the same rules of libel law applicable to a newspaper or a broadcasting company as ruled in the Sorensen case, supra. It is our conclusion that the court properly refused the demurrer to the evidence."

The Sorensen case referred to is reported in 123 Neb. 348, 243 N W. 82, 82 A. L. R. 1098. After again considering the question we adhere to the ruling in the McDonald case. This case furnishes a fine example for the wisdom of that rule. Here was a man irresponsible financially, laboring under a delusion so to speak, determined to assassinate the character of two citizens of good reputation, simply because he had been forced to pay a judgment for alimony. No newspaper would have dared print his libelous article, no broadcasting company would have considered it. It was so libelous and

defamatory that printing companies refused to print it. His own family was doing everything possible to restrain him from publishing the libel. Yet, through the facilities of the defendant company, the libelous dagger was pierced to the very marrow and heart of the reputation of McDonald and Edwards. We say, more effectively than could have been done through a newspaper or broadcasting station, because, as appellant said in its evidence, through its manager the libel went to a "tailor made" list. "Tailor made" it was indeed, because the list contained the names of lawyers, business men, judges and officials with whom McDonald and Edwards were in daily contact. The evidence showed that the libelous article was discussed at two meetings of the American Bar Association, by lawyers from coast to coast and from the great lakes to the gulf. Appellant in its brief says of the opinion in the McDonald case:

"It is an anomaly among the decisions of this country and foreign jurisdiction. It is our insistence that the unsoundness of that decision should be recognized, and this illogical, harsh and unjust doctrine should be removed from the decisions of this State at this, the earliest, opportunity to do so."

As we view the situation, the rule announced in the McDonald case is a wholesome rule based upon common sense and justice. The authorities cited in the opinion sustain it. As said before, the case at bar and the McDonald case are examples of the consequence that would naturally follow if the rule were as contended for by appellant. It would have taken less than two minutes of time on the part of Polk & Company to have glanced at the circular and refused its distribution.

Appellant also insists that the verdict of $25,000 punitive damages is so exorbitant as to indicate passion and prejudice on part of the jury and to shock the conscience of the court, therefore it should be set aside. No fault was found with the form of the instruction submitting this issue. In reviewing the evidence, which we think fully justified an assessment of punitive damages, we will also pass on the admissibility of evidence questioned by appellant. When the circulars were delivered at the defendant's office, an errand boy, employed by defendant, read one of the circulars for mere curiosity's sake and then replaced it in the box from which it had been taken. The court permitted him, over defendant's objection, to testify that he read the circular. The errand boy's mother was in charge of the office at the time, and the circular was read in her presence but not aloud. The evidence was admissible, if for no other purpose than a circumstance to show knowledge on part of the lady in charge. The circular looked sufficiently suspicious to the office boy to arouse his curiosity. A mere glance at the circular would arouse suspicion. On the face of it under the picture of McDonald, the words, "Exposed in Extortion Plot," appeared in large type. Also, to the left

of the picture and in plain view of a first glance at the folder, appeared the words, "Bar Head Violates Federal Extortion . . .", and to the right the words, "Thomas F. McDonald faces criminal . . . ." This was the folder filed in the records of the defendant company with the order given by Nulsen. From that a jury could infer that the defendant company had knowledge that the article was libelous. But that is not all, the evidence showed that Nulsen had been a customer of Polk & Company for a number of years. The company had in its files copies of a number of circulars which it had previously mailed for Nulsen. Circulars that were scurrilous, highly defamatory and libelous. Each was headed by a cartoon ridiculing and besmirching the character of a well known citizen. No citation of authority is necessary to sustain the ruling of the court in admitting the circulars in evidence. With that knowledge in possession of the defendant and its agents, a mere glance at the circular in question was sufficient to charge the defendant with knowledge that the circular was libelous. The plaintiff called the lady in charge and other employees of the defendant as witnesses. They, with the exception of the errand boy, testified that they saw the circulars but did not read any part thereof. Mr. Kingdon, the manager of the St. Louis office, testified in part:

"From the newspaper article I knew that it had been sent out by mail and I was anxious to know whether we did the mailing or some other letter shop did and so for that reason I asked Miss Oetter about it and she said we did, and I said, 'Let me see the circular.'"

Kingdon also testified that a copy of a circular sent out by them is supposed to be attached to the work letter sheet. That was done in this case. Kingdon had charge of several states and was not at the St. Louis office when the circulars were mailed. But his evidence revealed that when he made the inquiry of Miss Oetter she knew of the circular and knew that a copy thereof was in the files. These were adverse witnesses. But when all the evidence is considered, the only reasonable inference to be drawn therefrom is, that the agents of defendant knew the circular was libelous before it was mailed. The conduct of the defendant, subsequent to the distribution of the circular, disclosed a total disregard and a reckless indifference to the rights of plaintiff and McDonald. Note that immediately after the circular was distributed plaintiff and McDonald demanded a retraction. The father of Norman L. Nulsen was willing to cooperate. He informed McDonald to prepare any statement he desired and it would be published. McDonald did not desire this, but wanted a retraction sent to the parties who had received the circular. The father attempted, but without success, to get from Norman a list of the names to whom the circular had been sent. Plaintiff, when he learned that the defendant had distributed the circular, asked for the list. De-

fendant not only refused to give him the list but even refused to sell it to him.' Note the manager's evidence:

"Mr. Edwards came in the office and saw Miss Oetter and endeavored to purchase the list that was sent out. She agreed to sell it to him and then referred the matter to me. I said we could not sell it, as it was not our property. . . .

"We refused to sell the list to Mr. Murry Edwards because it was what we call a 'tailor-made' list made up especially for Mr. Nulsen."

Yes, "tailor made," to enable Nulsen to drive his poisonous, libelous dagger deep into the character of Edwards and McDonald. The only avenue through which alleviating oil could have been administered to the wounds was in possession of the defendant, and it refused to sell that avenue. It is that conduct, and not the verdict of $25,000 punitive damages, that is shocking. The jury, by its verdict, indicated that the defendant deserved an assessment of a large sum as punitive damages. The verdict cannot be explained upon any other theory. The evidence would have justified the assessment of a substantial sum as actual damages. The jury evidently reasoned that the $25,000 punitive damages would be paid to the plaintiff. In view of the circumstances and the conduct of defendant, its total disregard of the rights of plaintiff and McDonald, the verdict cannot be said to be excessive.

■ Punitive damages may be allowed even though the compensatory damages assessed are but nominal. [See State ex rel. v. Shain, 341 Mo. 733, 108 S. W. (2d) 351, 1. c. 356 (8-11) (12, 13), and cases there cited.] As to the amount being excessive, appellant cited the case of Jones v. West Side Buick Auto Co., 231 Mo. App. 187, 93 S. W. (2d) 1083, 1. c. 1089. In that case a verdict of $2,000 punitive damages was sustained. The defendant had sold plaintiff a second-hand car, and prior to the sale had set the speedometer to show the car had traveled 22,400 miles, when in truth and in fact it had traveled in excess of 48,000 miles. Further citation of authority ought not be necessary to demonstrate that the verdict in the case before us was not excessive. [But see Seested v. Post Printing & Publishing Co., 326 Mo. 559, 31 S. W. (2d) 1045.] The defendant company's business has been extended to a large number of important cities of this country. It does an enormous amount of business. Legitimate business. A business whereby it renders valuable service to industry. Through its facilities information and advertising matter can be disseminated to millions of persons and firms. Specially selected groups may be served, suiting the advertisers' demands. It is not unreasonable that the law should impose a duty upon such a gigantic corporation to guard against the use of its facilities to further the publication of vicious libels. What we have said, when read in connection with the opinion in the McDonald case, disposes of all

the points briefed by appellant. The judgment against R. L. Polk & Company in case number 37108, must be affirmed.

█ We will now consider Edwards' appeal from the judgment in favor of Albert G. Nulsen, Sr., father of Norman L. Nulsen, case number 37107. Many points pertaining to instructions given at respondent's request were briefed. Respondent contends that the evidence was insufficient to justify a verdict against him, and therefore errors in the instructions, if any, were harmless. █ We have reached the conclusion that respondent's contention must be sustained. There is not a scintilla of evidence that respondent at any time prior to the publication of the libelous article in any way aided or encouraged his son Norman in his scheme to defame the character of appellant Edwards and McDonald. The evidence is directly to the contrary. Respondent did all in his power to prevent its publication. On one occasion he made a special trip from the State of Texas to the city of St. Louis to prevent a publication. He reduced the allowance to his son, at McDonald's suggestion, so as to curtail his son's financial ability to publish the libel. In August, when it seemed that Norman had abandoned the idea, respondent did give him $500. This, however, in the belief that Norman was going to Washington to seek employment. When publication was an accomplished fact, respondent came to St. Louis from Michigan for the purpose of aiding McDonald in having a retraction reach those who had received the circular. He informed McDonald, by phone from Michigan, to have Norman arrested if necessary, and to prepare a statement and he, respondent, would have it published or mailed at his own expense. True, he was unsuccessful in his attempt to get a list of the names. The evidence upon which appellant relies is, that respondent gave Norman $500 to make a defense to charges of criminal libel and to the suits filed against him. The money was to defray the expense of taking depositions. When asked if it was for the purpose of establishing the truth of the charge, respondent was frank enough to say that that was Norman's idea but he did not think Norman could do it. Respondent always maintained that there was not a word of truth in the charges made by Norman. On August 31, 1936, three days after plaintiff's petition had been filed, respondent signed a letter addressed to Homer S. Cummings, Attorney-General of the United States. The body of the letter read as follows:

" 'For several months Norman L. Nulsen has been endeavoring to get a hearing before the Federal Grand Jury on charges which you have on file.

" 'We are still being harassed and respectfully request that you take prompt action. Kindly let us know at once what we may expect in the way of action from your department.

" 'Kindly address your reply to Albert G. Nulsen, in care of Mrs. Mildred Balke, 40 West 32nd Street, Indianapolis, Indiana.' "

That letter was signed by respondent at Norman's request. It was also signed by Albert G. Nulsen, Jr., and Norman. Norman had submitted charges to the Attorney General which were referred to in the libel. Norman was possessed of an insane or imaginary delusion intermingled with malice and hatred which rendered him uncontrollable. The evidence justifies the inference that the father signed this letter so that Norman would obtain a ruling from the Attorney General, which of course would be adverse to Norman's idea. There was no evidence offered to show that respondent had had any connection with the matters submitted to the Attorney General which were referred to in the letter. He at no time, prior to the publication of the libel, had had any disagreement with McDonald. He was highly pleased with the services rendered. Respondent bore no ill will toward plaintiff Edwards. The evidence showed that respondent did all in his power to prevent Norman from publishing the libel. We are of the opinion that the evidence failed to make a submissible case for the jury. It is therefore ordered that the judgment of the trial court be in all respects affirmed. *Cooley* and *Bohling*, CC., concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.