NORTHWESTERN NATIONAL CASU-
ALTY COMPANY of Milwaukee,
Wisconsin, Appellant,

v.

Edward A. McNULTY and Walter Scott
Smith, Appellees.

No. 19013.

United States Court of Appeals
Fifth Circuit.

Aug. 21, 1962.

Anthony Reinert, James A. Smith,
Wicker, Smith, Blomqvist, Hinckley &
Davant, Miami, Fla., for appellant.

Jackson L. Peters, John D. Marsh, Rob-
ert King High, Edward A. McNulty,
Knight, Smith, Underwood & Peters,
Miami, Fla., of counsel, for appellees.

Before JONES, WISDOM and GEW-
IN, Circuit Judges.

WISDOM, Circuit Judge.

This case presents the question of the liability of an insurance company, under an automobile accident liability policy, for punitive damages in a judgment against the insured. We hold that under Florida law public policy prohibits insurance against liability for punitive damages.

The Northwestern National Casualty Company issued a family combination automobile policy for $50,000 to the defendant, Walter S. Smith, in Virginia where Smith resides. The accident giving rise to the suit occurred in Florida. Smith, a drunken driver, traveling at eighty miles an hour or faster, weaving from side to side of the road, tried to pass the automobile the plaintiff, Edward McNulty, was driving. He made the attempt where it was impossible to pass or he completely lost control of his car. Smith's car smashed into the rear of McNulty's car. Without stopping to render aid, Smith fled the scene of the accident. He was arrested twelve miles down the highway when his car ran out of gas. McNulty suffered severe injuries including permanent damage to his brain.

McNulty sued Smith in a Florida state court. The complaint prayed for compensatory and punitive damages. The insurer's attorneys undertook the defense of the suit. They notified Smith that "there is always a possibility that the amount recovered, if any, could be in excess of [the insurance] coverage" and informed him that he had "the right * * to employ an attorney to represent [him] for this possible excess", but added, "please understand that you are not required to go to this expense as we will defend this case under the provisions of your insurance policy". After investigating the facts, they concluded, as they later wrote Smith after the trial, the "facts in this case were very bad and about the worst case we have ever had on the question of liability." The attorneys advised the insured that they planned to admit liability for compensatory damages but not for punitive damages. They did not inform the insured at any time before the trial that the insurance company disclaimed liability for the payment of punitive damages, if any should be included in the judgment.

The jury returned a verdict in favor of the plaintiff in the amount of $57,500, representing $37,500 in compensatory damages and $20,000 in punitive damages. McNulty, joined by Smith, then brought this ancillary garnishment action in the District Court for the Southern District of Florida to recover on the liability policy up to $50,000. The district court granted summary judgment for the plaintiff. The insurer appeals from that part of the judgment holding punitive damages recoverable.

### I.

Under the terms of the policy, the insured agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. *bodily injury*, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury' sustained by any person;

"B. injury to or destruction of property, including loss of use thereof, thereinafter called 'property damage' * * *; "

The policy excludes claims for "bodily injury or property damage caused intentionally by or at the direction of the insured."

■ The insurance company's first defense is that the language of the contract does not cover punitive damages. The appellant argues that a claim for punitive damages is not one for "bodily injury"; by definition punitive damages go beyond compensation for bodily injury. The appellant argues also that the "wilful, reckless, or wantonly negligent conduct" of the defendant, necessary under Florida law as a predicate for the award of punitive damages, is equivalent to intentional wrong; the insurance contract expressly excludes "damage caused

intentionally".[1] We find it unnecessary to construe the contract; we hold that should a policy provide specifically for such coverage, it would contravene public policy.

## II.

The force of public policy on insurance covering punitive damages depends on the nature or character of punitive damages.[2] The character of punitive damages—as compensation for the plaintiff or as punishment of the defendant and deterrence to others [3]—depends on the function such damages serves.

■■■ A. In this case the law of Florida and the law of Virginia are interrelated. The legal relations, rights, and liabilities between McNulty and Smith arising out of the automobile accident are governed by the law of Florida, where the accident occurred. The rights and obligations under the insurance contract between Smith and the appellant are governed by the law of Virginia, where the contract was made and issued, where Smith resides, and where, at the time it was made the contract might be expected to have its more important effects. McNulty, after obtaining his judgment against Smith, succeeded to Smith's rights against the appellant on the insurance contract. Since this is a suit on the contract, Virginia law governs the question whether an insurance policy against punitive damages contravenes public policy.[4] Virginia cases reflect the same view of punitive damages as Florida cases,[5] but no Virginia court has passed on whether an insurer may be liable for such damages. In seeking to ascertain what the Virginia policy would be, however, we must look to the law imposing the punitive damages to determine their

1. Justice Cardozo in the case of Messersmith v. American Fidelity Co., 232 N.Y. 161, 133 N.E. 432, 19 A.L.R. 876 (1921) made the following often-quoted statement:

"The defendant does not greatly dispute that there may be indemnity against the consequences of negligence. It argues, however, that in this case the plaintiff's liability was the product, not of negligence, but of willfulness. Undoubtedly the policy is to be confined to liability for injuries that may be described as accidental. Even if its terms do not so limit it, the fundamental principle that no one shall be permitted to take advantage of his own wrong would import the limitation * * *."

2. The Restatement of Torts defines punitive damages as "damages other than compensatory or nominal damages awarded against a person to punish him for his outrageous conduct." Restatement of Torts, Sec. 903. " 'Compensatory damages' are the damages awarded to a person as compensation, indemnity or restitution for harm sustained by him. Comment: a. Where there has been harm only to the pecuniary interests of a person, compensatory damages are designed to place him in a position substantially equivalent in a pecuniary way to that which he would occupy had no tort been committed. * * * However, such damages, although frequently not segregated in a verdict differ from punitive damages, both in the reasons for their

existence and in the method of their computation." Restatement of Torts, Sec. 903. For an excellent discussion of the doctrine see Morris, Punitive Damages in Tort Cases, 44 Harv.L.Rev. 1173 (1931).

3. A few isolated cases recognize the vindictive nature of punitive damages, a combination of personal and public revenge that may be justified as a means of discouraging self-help. See Gostkowski v. Roman Catholic Church of the Sacred Hearts, 262 N.Y. 320, 186 N.E. 798, 800 (1933). Cf. Holmes, The Common Law, 2–4, 39–42 (1881).

4. Western Casualty and Surety Company v. Aponaug Mfg. Co., 5 Cir., 1952, 197 F. 2d 673.

5. "The Virginia cases reflect the view that punitive damages are not given as the plaintiff's due, but are given for the protection of the public, as punishment to the defendant, and as a warning and example to deter him and others from committing like offenses." Comment—Punitive Damages and Their Possible Application in Automobile Accident Litigation, 46 Va.L.Rev. 1036 (1960), citing Zedd v. Jenkins, 194 Va. 704, 707, 74 S.E.2d 791, 793 (1953) (dictum); see, e. g., Wright v. Everett, 197 Va. 608, 614, 90 S.E.2d 855, 859 (1956); Ramsay v. Harrison, 119 Va. 682, 708, 89 S.E. 977, 985 (1916); Norfolk & W. R. R. Co. v. Neely, 91 Va. 539, 540, 22 S.E. 367, 368 (1895).

character. This brings us back to Florida, where the accident occurred, where the action was brought and the damages awarded, and where the punitory and deterrent effects of the punitive damages awarded in this case would have their greatest impact.

 Florida cases follow the orthodox theory that punitive damages are punitory and a deterrent.[6] The first case in Florida to discuss this subject was Smith v. Bagwell, 19 Fla. 117, 121 (1882). In that decision the court's description of punitive damages might be interpreted as indicating that in Florida such damages are partly compensatory. The court said: "Compensatory damages are such as arise from actual and indirect pecuniary loss, mental suffering, value of time, actual expenses, and to these may be added bodily pain and suffering. Exemplary, vindictive or punitory damages are such as blend together the interests of society and of the aggrieved individual, and are not only a recompense to the sufferer but a punishment to the offender and an example to the community." The support this decision gives to a compensatory theory of punitive damages is undercut by two other factors. First, in spite of the quoted statement, throughout its opinion the court emphasized that punitive damages are assessed against the defendant to punish the offender and act as an example and warning to the community. Second, the question before the court in Smith v. Bagwell was whether the allowance of punitive damages in a case where the defendant was subject to criminal sanctions contravened the constitutional protection against double jeopardy. When this point has been raised some courts have avoided the difficult constitutional question whether the civil penalty violates prohibition against double jeopardy by treating punitive damages as compensa-

tory or retributive;[7] the payment is to the injured person, not to the state.

Later Florida cases base punitive damages on punishment rather than compensation. Thus, in Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 221 (1936) the court limited the statement in Smith v. Bagwell, which the court said authorized "vindictive damages" for an assault and battery committed under aggravating circumstances "because the circumstances of aggravation attending the injury have increased the injury." The court said: "[D]amages known as exemplary or punitive damages (smart money) are altogether of a different character than vindictive damages. * * * Exemplary or punitive damages are therefore *damages ultra compensation,* and are authorized to be inflicted when the wrong done partakes of a criminal character, though not punishable as an offense against the state, or consists of aggravated misconduct or a lawless act * * *." Similarly, in Dr. P. Phillips & Sons, Inc. v. Kilgore, 152 Fla. 578, 582, 12 So.2d 465, 467 (1943) the court again said: "Punitive or exemplary damages is an amount allowed over and above actual or compensatory damages. Its allowance depends on malice, moral turpitude, wantonness, or the outrageousness of the tort and is awarded as a deterrent to others inclined to commit a like offense." See also Sauer v. Sauer, Fla.App.1961, 128 So.2d 761; Carraway v. Revell, Fla.1959, 116 So.2d 16; Ross v. Gore, Fla., 48 So.2d 412 (1950); Kress & Co. v. Powell, 132 Fla. 471, 180 So. 757 (1938).

In Florida East Coast Ry. Co. v. McRoberts, 111 Fla. 278, 149 So. 631, 94 A.L.R. 376 (1933) the question was whether punitive damages could be recovered under the Florida Death by Wrongful Act statute (F.S.A. §§ 768.01, 768.02), which authorized the jury to

6. See 9 Fla.Jur., Damages, § 114–124; Comment—Franza, Factors Affecting Punitive Damages, 7 Miami L.Q. 517 (1953).

7. "Courts have shown a disposition to say that punitive damage admonition is

not punishment in order to steer clear of constitutional inhibitions against double punishment." Morris, Punitive Damages in Tort Cases, 44 Harv.L.Rev. 1173, 1197 (1931).

award to the statutory representative of the deceased such damages as the party entitled to sue "may have sustained by reason of the death of the party killed." The court construed the statute as creating in the statutory representative a new right of action rather than transferring to the representative the deceased's right of action, and as authorizing only an award of damages to compensate for the injury sustained. The court held that since punitive damages "are damages over and above such sum as will compensate a person for his actual loss", they could not be recovered under the Wrongful Death Statute.[8] In reaching this conclusion the court looked to other states having wrongful death statutes patterned, as was Florida's after Lord Campbell's Act providing that "the jury may give such damages as they may think proportioned to the injury resulting from such death." The court found that of the thirty-three states with such statutes twenty-four would not allow recovery of punitive damages, five would allow recovery of punitive damages, and the remaining states had not established a rule one way or the other. There is no doubt that if the court had considered punitive damages under Florida law as compensatory to any significant extent, the court would have allowed recovery of such damages under the Wrongful Death Act.

See Sauer v. Sauer, Fla.App.1961, 128 So.2d 761, which relies on McRoberts.

The Florida characterization of punitive damages as a *penalty,* imposed as a means of punishing the defendant in order to deter him and others from antisocial conduct, and to no significant extent *compensation,* conforms with the most widely accepted basis for punitive damages in other American jurisdictions.[9] Only a few jurisdictions recognize punitive damages as compensatory: Connecticut, Michigan, and New Hampshire. In Connecticut punitive damages are viewed as primarily compensatory. They are awarded, however, only in cases of extreme culpability and are limited to the plaintiff's demonstrable litigation expenses.[10] In a few other states punitive damages are not accepted at all, except as allowed by statute in certain situations: Illinois, Louisiana (following the civil law rejection of the doctrine), Massachusetts, Nebraska, and Washington.

B. Strangely enough, there is only a slight sprinkling of cases on the question of the insurer's liability for punitive damages. In most of these cases the court has held there was coverage, without discussing what to us seems more important—the question of public policy.[11]

Tedesco v. Maryland Casualty Co., 127 Conn. 533, 18 A.2d 357, 132 A.L.R. 1259

8. "Actual damages are recoverable at law, out of a wrongdoer by the injured party as a matter of right. Such damages are recoverable as compensation for the actual loss sustained by such an injured party by reason of the *tortfeasor's* wrongdoing. It is not so as to punitive damages. Punitive damages are damages over and above such sum as will compensate a person for his actual loss. And the law permits their imposition, in proper cases, at the discretion of the jury, not because the party injured is entitled under the law to recover punitive damages as a matter of right, but as punishment to the wrongdoer, for the purpose of deterring him and others committing similar violations of the law, from such wrongdoing in the future." Florida East Coast Ry. Co. v. McRoberts, 111 Fla. 278, 282, 149 So. 631, 632, 94 A.L.R. 376 (1933).

9. Oleck summarizes the position of each state on the recognition of punitive damages. Oleck, Damages to Persons and Property, § 269 540.1 (1961). For general surveys, see 15 Am.Jur., Damages § 266; 25 C.J.S. Damages § 117.

There is full discussion in the now dated treatises on damages: 1 Sedgwick, Damages § 347–88 (9th Ed. 1912); 2 Sutherland, Damages §§ 390–412 (4th Ed. 1916). See also McCormick, Damages §§ 77–85 (1935).

10. Craney v. Donovan, 92 Conn. 236, 102 A. 640, L.R.A.1918C, 96 (1917); Chykirda v. Yanush, 131 Conn. 565, 569, 41 A. 2d 449, 450 (1915).

11. There is considerable discussion of public policy in legal writings. Oleck argues strongly that "It would seem that insurance against exemplary damages frustrates their purposes and should be considered contrary to public policy." Oleck, Damages to Persons and Property, § 275C, p. 560 (1961). Virtually **all** notes and comments on the subject

(1941), is perhaps the case most frequently discussed in legal writings on the question. As pointed out, Connecticut is one of the few states where punitive damages *in the usual sense* are not generally allowed. Connecticut, however, has a statute allowing the award of double or treble damages if they grow out of wilful violation of traffic regulations. In Tedesco the insured sued the insurer to be reimbursed for a judgment of double damages under that statute. The court ruled that the statutory provision was a penalty and that allowing a wrongdoer to insure himself against it would contravene public policy. The court said:

"A policy which permitted an insured to recover from the insurer fines imposed for violation of a criminal law would certainly be given public policy. The same would be true of a policy which expressly covered an obligation of the insured to pay a sum of money in no way representing injuries or losses suffered by the plaintiff but imposed as a penalty because of a public wrong."

It should be noted, however, that the court distinguished American Fidelity & Casualty Co. v. Werfel, 230 Ala. 552, 162 So. 103 (1935) on the ground, "The recovery sought in [Tedesco] is not one based upon a judgment for punitive damages, but upon the imposition of a penalty".[12] We see no difference in principle between public policy as established by the legislature and public policy established by the judiciary.[13]

agree with Oleck. See especially the treatment of the subject in Comment—Fischer, Insurance Coverage and the Punitive Award in the Automobile Accident Suit, 19 U.Pitt.L.Rev. 144 (1957); Note, Exemplary Damages in the Law of Torts, 70 Harv.L.Rev. 517 (1957); and Logan, Punitive Damages in Automobile Cases, Insurance L.J. 27 (1961). See also Comment—Damages—Intoxicated Driver—Punitive Damages, 46 Iowa L. Rev. 645 (1961); Note—Liability Insurance: Recovery of Punitive Damages, 14 Okla.L.Rev. 220 (1961); Comment—Punitive Damages and Their Possible Application in Automobile Accident Litigation, 46 Va.L.Rev. 1036 (1960); Comment—Franza, Factors Affecting Punitive Damages, 7 Miami L.Q. 517 (1953); Comment—Insurer's Liability for Punitive Damages, 14 Mo.L.Rev. 175 (1949); Note—Punitive Damages (Tedesco v. Maryland Casualty Co.), 40 Mich.L.Rev. 128 (1941). Appleman furnishes the only discordant note. He writes: "However, it is clear that the average insured contemplates protection against claims of any character caused by his operation of an automobile, not intentionally inflicted. When so many states have guest statutes in which the test of liability is made to depend upon wilful and wanton conduct, or when courts, in an effort to get away from contributory negligence of the plaintiff, permit a jury to find a defendant guilty of wilful and wanton conduct where the acts would clearly not fall within the common law definitions of those terms, the insured expects, and rightfully so, that his liability under those circumstances will be protected by his automobile liability pol-

icy. With this view the majority of courts have agreed, and have imposed liability upon the insurer even though the recovery was based upon wilful or wanton conduct, or even though the verdict may have included punitive damages." 7 Appleman, Insurance Law and Practice § 4312, p. 132; § 4900 (1962). This statement occurs in a section dealing with "Construction of Terms—(a) Accidental Injury". For authority, he relies on American Fidelity & Casualty Co. v. Werfel, 231 Ala. 285, 164 So. 383 (1936); Rothman v. Metropolitan Casualty Ins. Co., 134 Ohio St. 241, 16 N.E.2d 417, 117 A.L.R. 1169 (1938); and Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Thornton, 4 Cir., 1957, 244 F.2d 823. He cites Ohio Casualty Ins. Co. v. Welfare Finance Co., 8 Cir., 1934, 75 F.2d 58, cert. den'd, 295 U.S. 734, 55 S. Ct. 645, 79 L.Ed. 1682 to show how courts "have vacillated . . . preferring not to decide it directly". These cases are discussed in this opinion. Appleman cites also a Louisiana case and a Texas case, both of which we consider inapplicable.

12. "While this language can be justified on the ground that in Connecticut the purpose of awarding punitive damages is not to punish the defendant for his offense but to compensate the plaintiff for his injury, it certainly cannot be applied in support of a general rule of law since the majority do recognize the imposition of punitive damages as a penalty." 19 U.Pitt.L.Rev. 144, 149 (1957).

13. See 19 U.Pitt.L.Rev. 144 (1957); 14 Mo.L.Rev. 175 (1949).

Universal Indemnity Insurance Co. v. Tenery, 96 Colo. 10, 39 P.2d 776 (1934) shows how the two issues, coverage and public policy, appear to overlap. In that case the insured was in the car rental business. His policy was written to comply with a state law requiring insurance coverage on such vehicles, "Insuring the renter against liability arising out of his negligence". A verdict was secured against the renter for compensatory and punitive damages. The court modified the judgment below by deducting the sum awarded as exemplary damages. The court said:

"Included in the total amount of the judgment entered against the garnishee herein was the award of exemplary damages against defendant Callahan in the sum of $1,000. This award was primarily for the punishment of Callahan for his wrongful acts and as a warning to others. It was in no wise compensation to the injured party for bodily injuries or actual loss occasioned by the negligence of Callahan. The insurance company did not participate in this wrong, and was under no contract to indemnify against such. In this particular matter the policy indemnifies against damages for bodily injuries, and nothing in addition is contracted for, and there is no further liability. The injured will not be allowed to collect *from a non-participating party for a wrong against the public.*"

A certain amount of authority, some fanciful, is said to uphold the validity of an insurance contract covering liability for punitive damages. For example, the appellees cite Rothman v. Metropolitan Casualty Ins. Co., 134 Ohio St. 241, 16 N. E.2d 417, 117 A.L.R. 1169 (1938). In that case the insurance company defended against a suit for *compensatory* damages on the ground that the wanton negligence of the insured was equivalent to an intentional infliction of the injury within the meaning of an exclusion clause in the insurance policy. The appellate court rejected this argument and affirmed the judgment for the plaintiff. In such a case there is no punitive damage question. There is no holding allowing recovery of such damages from the insurer; the holding is only that an insurer is liable for compensatory damages for wilful, wanton, or reckless conduct. The crucial distinction between that case and the case before us is the different function served by compensatory and punitive damages. In a system of law basing recovery of damages on the defendant's culpability, compensatory liability, while it may discourage negligent conduct as a side effect, is primarily designed to shift a loss from a wholly innocent party to one whose fault is responsible for causing the loss, although in many cases the fault of the responsible party may not have been so blameworthy that he would have been punished criminally if the fault had not caused an accident. The rationale of compensatory damages is not so much a policy that the responsible party *should* pay; it is more a policy that the wholly innocent party *should not* pay. Insurance against compensatory liability therefore does not frustrate the reason for imposing the liability. But in a case involving the determination that punitive damages are insurable the public policy considerations are broader and more important.

Two Alabama cases, one Rhode Island case, and a Third Circuit federal court case hold that an injured party may recover punitive damages from the wrongdoer's insurance company.[14] American Fidelity and Casualty Company v. Werfel, 231 Ala. 285, 164 So. 383 (1935); Capital Motor Lines v. Loring, 238 Ala. 260, 189 So. 897 (1939); Morrell v. Lalonde, 45 R.I. 112, 120 A. 435 (1923), and Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Thornton, 4 Cir., 1957, 244 F.2d 823. In each of these cases the plaintiff obtained recovery against the insurance company on a lump-sum judgment for compensatory and punitive dam-

14. These are the cases Appleman relies on. 7 Appleman § 4312, 4900 (1962). See footnote 11 to this opinion.

ages. The failure to award separate amounts as compensatory damages and punitive damages presented an obstacle in those cases not present here, since the appellate court could not make a separation itself.

In the two Alabama cases the court did not consider the public policy argument. Alabama, however, takes an unusual position with regard to damages for wrongful death; such damages are considered purely "punitive". The Alabama Supreme Court has said: "The damages recoverable are punitive in their nature to punish the person or corporation for negligently or wrongfully causing the death. —Watson v. Adams, 187 Ala. 490, 65 So. 528, Ann.Cas.1916E, 565. The damages recoverable in such action are in no sense compensatory." Gulf, Mobile & Ohio R. Co. v. Williams, 1949, 251 Ala. 516, 38 So. 2d 334, 336. Moreover: "From [the Alabama] authorities it is manifest that it is not necessary to the awarding of exemplary damages that the plaintiff show wantonness or willfulness in the commission of the tort; but such damages may be awarded, if the commission of the tort is attended with circumstances of aggravation, and therefore may be awarded in a case involving a charge only of simple negligence." Birmingham Waterworks Co. v. Brooks, 16 Ala.App. 209, 76 So. 515, 518 (1917). It is not surprising, therefore, that Alabama courts hold that an insurance policy covers "punitive" damages. The "Werfel case", the case most often cited for the proposition that a liability policy covers punitive damages, is "of little value for establishing a general rule since its conclusion is based not on legal reasoning but is the product of a peculiar statutory scheme which would seem to have little application outside of Alabama". Note, Insurance Coverage and the Punitive Award in the Automobile Accident Suit, 19 U.Pitt.L.Rev. 144, 151 (1957). Capital Motor Lines v. Loring follows Werfel. See also Employers Ins. Co. of Alabama v. Brock, 233 Ala. 551, 172 So. 671 (1937).

Morrell v. Lalonde was an action against a surgeon for malpractice based on the negligent performance of an operation. The court disposed of the problem in one sentence, decreeing that the contract to indemnify for "damages on account of bodily injuries" covered punitive damages.[15] The court did not discuss public policy.

In Thornton the plaintiff obtained a $10,000 judgment against the insured that included both compensatory and punitive damages. He then sought recovery from the insurance company on a $5,000 policy in an ancillary proceeding. It was impossible to tell what amount was for punitive damages and it was probable that the compensatory damages alone exceeded the $5,000 limit on the insurance coverage. Since the court adjudging the insurance company's liability could not have ordered a new trial of the action between the plaintiff and the insured, it was faced with an all-or-nothing choice. These circumstances considerably diminish the force of its holding that punitive damages were recoverable from the insurance company. In Thornton the insurer attempted to defeat recovery for both types of damages by equating "wilful and wanton" negligence (sufficient to impose punitive damages) with an intentional act excluded from coverage. There can be no quarrel with the result.

There is one group of cases imposing vicarious liability on an insurance company for punitive damages awarded against an insured. These cases deal with the particular situation of punitive damages against an employer for an injury caused by an employee. Many states do not allow an award of punitive damages against one whose only liability is vicarious. When such liability is allowed the employer is usually permitted to protect himself by insurance. See Atlantic Greyhound Lines v. Lovett, 134 Fla. 505, 184 So. 133 (1938); General Casualty Company of America v. Woodby, 6 Cir., 1956, 238 F.2d 452. In these cases a

15. Cf. United States Fidelity & Guaranty Co. v. Janich, S.D.Cal.1943, 3 F.R.D. 16.

factor not always focused upon, yet of crucial importance, is the point that if the employer did not participate in the wrong the policy of preventing the wrong-doer from escaping the penalties for his wrong is inapplicable. Ohio Casualty Ins. Co. v. Welfare Finance Co., 8 Cir., 1934, 75 F.2d 58, 60, cert. den'd, 295 U.S. 734, 55 S.Ct. 645, 79 L.Ed. 1682, places full emphasis on this factor. In granting judgment against the insurance company for punitive damages, the court based its decision not on the insurance contract but on the limits of the doctrine of respondeat superior.[16] The court declared: "[I]t might well be said that it would be against public policy to permit a person to protect himself in advance against the consequences of intentional wrongdoing injuries to others. A different situation is present where the sole liability of the insured arises out of the relation of master and servant. * * * In this situation where there was no direct or indirect volition upon the part of the master in the commission of the act, no public policy is violated by protecting him from the unauthorized and unnatural act of his servant." Public policy is not violated by insurance in such a situation anymore than it would be if a newspaper took out insurance for libel.

C. The argument that insurance against punitive damages would contravene public policy is sometimes said to rest on the doctrine that "no one shall be permitted to take advantage of his own wrong." Mr. Justice Cardozo in Messersmith v. American Fidelity Co.,

232 N.Y. 161, 133 N.E. 432, 19 A.L.R. 876 (1921). That doctrine is not necessarily applicable to cases of automobile liability insurance covering punitive damages. In such cases the public policy against coverage is not so much to prevent encouragement of wrong-doing by obstructing the hopes of profit; it is rather to make effective the discouragement of wrong-doing by the imposition of punishment. Where a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.

The policy considerations in a state where, as in Florida and Virginia, punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimate-

16. The general rule is that the respondeat superior doctrine will not operate to render a principal liable for punitive damages because of a wrong committed by his servant or agent. "Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense." Lake Shore & Michigan Southern Railway Co. v. Prentice, 1893, 147 U.S. 101, at 107, 13 S.Ct. 261, at 263, 37 L.Ed. 97. See also Aetna Life Insurance Company v. Brewer, 1926, 56 App.D.C. 283, 12 F.2d 818,

46 A.L.R. 1499; Hogg v. Plant, 145 Va. 175, 133 S.E. 759, 47 A.L.R. 308 (1926). Similarly, the frequent refusal to allow a recovery of punitive damages against an executor for a wrong committed by the deceased is justifiable only on the rationale that the sole function of punitive damages is punishment and the death of the tortfeasor eliminates this function. Marcante v. Hein, 51 Wyo. 389, 67 P.2d 196 (1937); Sullivan v. Associated Billposters and Distributors, 2 Cir., 1925, 6 F.2d 1000, 1012, 42 A.L.R. 503; see Annot. 65 A.L.R. 1049-51 (1929).

ly come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured.

There are substantial practical difficulties, bearing on public policy, in allowing insurance against punitive damages. (1) It would produce a serious conflict of interest between the insurer and the insured in settlement negotiations and in trial tactics. There was a conflict of interest in this case when the insurer refused an offer of settlement for $35,000, again when the insurer said nothing to the insured before trial about punitive damages, and still again when the insurer elected to concede liability for compensatory damages. (2) There would be a conflict between the rule that in assessing punitive damages evidence of the financial standing of the defendant may be considered by the jury and the rule against referring to the defendant's insurance in the presence of the jury. (3) Fantastic results would be possible having no relation to making the injured party whole. Thus in Edwards v. Nulsen, 1941, 347 Mo. 1077, 152 S.W.2d 28, the court approved actual damages of one dollar and punitive damages of $25,000; in Livesey v. Stock, 1929, 208 Cal. 315, 281 P. 70, there were actual damages of $750 and punitive damages of $10,000. One of these cases was a suit for libel and one for battery but they point up the unrealities of jury verdicts when juries go beyond compensatory damages either by directly awarding punitive damages or by awarding a lump-sum verdict including an x-factor representing the jury's sense of retribution and estimate of the amount needed to punish and deter. Such verdicts are justifiable only if the man who pays is the wrongdoer.

There is an argument for regarding the punitory theory of punitive damages as anachronistic in cases where, historically, exemplary damages represent nonpecuniary losses such as injured feelings, damaged reputation, humiliation, shame, pain and suffering (in certain states). In these cases it can be said that liability insurance is for the injured party, and that the insurance carrier should be liable for such losses. At the other end of the scale, there is an argument that the law should not favor punitive damages: there is enough of a punitive element in a tort system of liability based on fault. In an early, able decision Justice Foster, for the New Hampshire Supreme Court, argued that the "true rule, simple and just, is to keep the civil and criminal process and practice distinct and separate". He denounced punitive damages as "a monstrous heresy * * * an unhealthy excrescence, deforming the symmetry of the body of the law." Fay v. Parker, 53 N.H. 342, 382 (1873). But a hundred years ago Judge Foster did not drive down highways dodging drunken drivers weaving in and out of traffic at a hundred miles an hour.

■ Considering the theory of punitive damages as punitory and as a deterrent and accepting as common knowledge the fact that death and injury by automobile is a problem far from solved by traffic regulations and criminal prosecutions,[17] it appears to us that there are especially strong public policy reasons for not allowing socially irresponsible automobile drivers to escape the element of personal punishment in punitive damages when they are guilty of reckless slaughter or maiming on the highway.[18] It is no

17. "Traffic accidents across the nation took 17,090 lives in the first six months of 1960, virtually no change from 17,000 deaths for same period last year, 600,000 suffered disabling injuries.—National Safety Council," Taylor's Insurance Digest, August 6, 1960, p. 75.

18. "The doctrine of punitive damages permits individualization. * * * New tests should be devised to permit the allowance of punitive damages in any case in which compensatory damages are insufficient to serve admonitory purposes, and in which effective admonition is important to justify a further invasion of the defendant's resources than that effected by compensatory damage verdicts alone." Morris, Punitive Damages in

answer to say, society imposes criminal sanctions to deter wrongdoers; that it is enough when a civil offender, through insurance, pays what he is adjudged to owe. A criminal conviction and payment of a fine to the state may be atonement to society for the offender. But it may not have a sufficient effect on the conduct of others to make the public policy in favor of punitive damages useful and effective. So, at least, seems to be the policy of Florida and Virginia.[19] To make that policy useful and effective the delinquent driver must not.be allowed to receive a windfall at the expense of the purchasers of insurance, transferring his responsibility for punitive damages to the very people—the driving public—to whom he is a menace. We are sympathetic with the innocent victim here; perhaps there is no such thing as money damages making him whole. But his interest in receiving non-compensatory damages is small compared with the public interest in lessening the toll of injury and death on the highways; and there is such a thing as a state policy to punish and deter by making the wrongdoer pay.

The general lack of agreement on the meaning of the term "punitive damages" impels us to define the scope of our holding in this case. First, by "punitive damages" we mean damages awarded with a view to punish the defendant for irresponsible conduct and to deter the defendant and others from similar misconduct. The misconduct we have in mind is intentional or malicious wrongdoing, or, action or inaction having such a con-

scious disregard of others that a jury might fairly infer from the circumstances of aggravation that the wrong partakes of a criminal character, whether or not it is punishable as an offense against the state.[20] Second, by punitive damages we do not mean such damages as may be awarded for simple negligence, even though such damages may be termed "punitive", as in actions under the Alabama Wrongful Death Statute (Code of Ala., Tit. 7, § 123). Nor do we have in mind damages awarded under the automobile guest statutes, unless the tortious acts would amount to misconduct justifying punitive damages as the term is used here. See Carraway v. Revell, Fla.1959, 116 So.2d 16. Finally, this case involves a tort accident in Florida allegedly covered by a Virginia accident liability policy. Our holding is based on the type of tort here involved, the nature of the policy, and the laws of Florida and Virginia.

### III.

■■ The appellees argue that in any event the insurance company is estopped to deny its liability for punitive damages, because of the company's actions in this case. This is an appealing argument. Consistency compels us to hold, however, that since public policy forbids an insurer and an insured to enter into an insurance contract covering punitive damages, public policy forbids the accomplishment of the result by an estoppel. "The doctrines of estoppel and waiver do not in general apply in transactions that are forbidden by statute or that are con-

Tort Cases, 44 Harv.L.Rev. 1173, 1207, 1209 (1931).

19. State policies based on absolute liability, on insurability, or on accident proneness (automobile deaths a "disease") have no bearing on the case before us.

20. In Carraway v. Revell, Fla.1959, 116 So.2d 16, the court said: "The character of negligence necessary to sustain an award of punitive damages must be of 'a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the pre-

sumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.' This definition 'appears to be in line with the weight of authority as to the character of negligence necessary to be shown to sustain criminal liability.' Mr. Chief Justice Brown in Cannon v. State, 1926, 91 Fla. 214, 107 So. 360, 363. Cf. Jackson v. State, Fla.App.1958, 100 So. 2d 839; Porter v. State, Fla.1956, 88 So.2d 924."

trary to public policy." Montsdoca v. Highlands Bank and Trust Company, 85 Fla. 158, 95 So. 666.

■ The general rule is that the doctrine of waiver and estoppel cannot be resorted to extend coverage on a policy. This Court has said, "The rule is that while an insurer may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, the coverage or restrictions on the coverage cannot be extended by the doctrine of waiver or estoppel". Carnes & Co. v. Employers Liability Assurance Corp., 5 Cir., 1939, 101 F.2d 739.

## IV.

Walter Smith, the insured, no doubt like the average insured, had no notion that he was not protected against a judgment for the damages assessed against him. And, there is no doubt that Northwestern National Casualty and other companies, which must be conscious of the problem, keenly conscious perhaps, could easily have solved the problem by a simple language change in the exclusion clause, had they been willing to bring the problem out in the open by putting the public on proper notice that insurance companies deny liability for punitive damages.

The Court is shocked that this insurer failed to put the insured on notice of its intention to deny liability for punitive damages. The Court is of the opinion that in the circumstances of this case the relationship between the parties created a duty on the insurance company to inform the insured fully and timely before the trial of the company's position that the contract did not cover punitive damages. The decision of the Court is without prejudice to any action the appellees may have against the appellant for damages, if any, caused by the breach of that duty.

The judgment is affirmed as to the compensatory damages and reversed as to the punitive damages, without prejudice to the appellees' bringing any other actions against the appellants.

GEWIN, Circuit Judge (specially concurring).

With heavy emphasis on the limitations set forth in the scholarly opinion of my brothers of the majority, I concur in the result reached under the facts and in the circumstances of this particular case.

In my view, the term "punitive damages" is the wrong standard to use in making a sweeping declaration of public policy. The term is too loose, vague, indefinite and uncertain; and its meaning often varies from state to state, court to court, and jury to jury. It is a chameleon of the law—changing its hue to the color of the situation in which it may be used. The courts have used it loosely and have developed a number of synonyms which are themselves subject to the same criticism. Some of these synonyms are: vindictive, exemplary, punitory, and "smart money". An apt illustration of the difficulty involved is contained in the very candid statement of the Louisiana Court of Appeal (1 Cir., 1959) in the case of Loeblich v. Garnier, 113 So.2d 95 (note 4 citing cases to the same effect omitted):

"The often found general statement that only compensatory and not punitive damages are awardable in Louisiana is in apparent conflict with the awards often made for damages for mental anguish and embarrassment caused by an illegal and deliberate violation of property rights or for such violation itself irrespective of any pecuniary damage caused thereby (which damages, according to the definition above cited, are regarded in other states as exemplary or punitive damages). The key to resolution of this conflict seems to be that in such circumstances such awards in Louisiana are regarded as compensatory for violations of a recognized property right, rather than punitory."

The law of contracts is also involved. In Palmer v. Chamberlin, (5 Cir., 1951) 191 F.2d 532, 539, 27 A.L.R.2d 416, our Court had occasion to consider the rules which should govern a court when called upon to declare a contract void on the

ground that it conflicts with public policy. Relying on the well respected authority of Bank of Augusta v. Earle, 13 Pet. 519, 597, 10 L.Ed. 274, the court quoted from the opinion in that case the announced principle " * * * that men shall have the utmost liberty of contracting and that their agreements, when entered into fairly and voluntarily, shall be held sacred and enforced by the courts."

The majority opinion expresses the very laudable hope that the philosophy therein announced will serve as an effective deterrent of the conduct involved. All of us are concerned with the high death toll and personal injuries occurring on the highways, but I am somewhat skeptical that the prohibition of insurance against liability for punitive damages will accomplish the results expected by the majority. There is no certain measuring stick to determine the effectiveness with which the law operates in a given field, but all the states have rather strict criminal laws relating to the operation of motor vehicles. If the criminal penalties provided by such statutes fail to deter the wrongdoers, I seriously doubt that closing the market to insurance coverage will do so. As a matter of fact, it is my judgment that the opposite result will follow.

Insurance companies have assumed an important role in educating the public of the dangers inherent in recklessness, willful misconduct, gross negligence, and even simple negligence in the operation of motor vehicles. If insurance companies are eliminated from the market in all punitive damage cases, their efforts may be less intense. Businessmen and others need protection. It is doubtful that affording such protection would encourage willful violation of the law or reduce our moral standards. The borderline between willful and wanton injury and injury as the result of simple negligence, is often a hairline distinction. The sufferer gains little solace from the doubtful and unpredictable uncertainty of judges and juries as they undertake to place the conduct of the wrongdoer in the categories of willful, intentional, wanton, gross, reckless, or other categories of negligence. Those companies who do not wish to sell such protection may withdraw their product from the market, but I daresay that the insurance companies themselves prefer to determine the risk involved and the premiums to be charged rather than to have the marketplace destroyed.

If we reduce liability to those cases which arise without serious fault on the part of the insured, we destroy the theory of indemnity and protection. As pointed out by Judge Cardozo (later Justice Cardozo), in the early case of Messersmith v. American Fidelity Co., 232 N.Y. 161, 133 N.E. 432, cited in footnote 1 of the majority opinion:

"Liability of the owner, who is also the operator, can never be incurred without fault that is personal. Indeed, the statute has so covered the field that it can seldom, if ever, be incurred without fault *that is also crime.*" (Emphasis added.)

As pointed out by the distinguished Judge, the traffic laws of New York then, certainly to a greater extent now, were heavily charged " * * * with the threat of penal consequences". In the cited case, the defense was that liability was not based upon negligence but upon willfulness and that such conduct should not be covered by the policy.

It is also quite apparent that my brothers of the majority are looking at this question from one direction only—from the point of view of the nature of the wrong which caused the injury. What about the injured party? Implicit in the entire field of tort liability and insurance law is the concept of furnishing some protection to those who are injured. Public policy is involved here to a greater extent. What will society do with the thousands who are injured daily and to some of whom punitive damages are awarded.

I cannot better state my view than to quote from the opinion in Margaret Ann Super Markets, Inc. v. Dent (Fla.1953) 64 So.2d 291, 292, which quoted a very

early Florida case, Kress & Co. v. Powell, 132 Fla. 471, 180 So. 757:

" 'Compensatory damages are defined as such as arise from actual and indirect pecuniary loss, mental suffering, value of time, actual expenses, and bodily pain and suffering. *Exemplary, vindictive or punitory damages are such as blend together the interests of society and of the aggrieved individual, and are not only a recompense to the sufferer but also a punishment to the offender and an example to the community.*' " (Emphasis added.)

The more appropriate basis upon which to hold that public policy prohibits insurance against liability is the nature of the conduct of the wrongdoer—not the nature of the damages awarded. If the defendant acted willfully, intentionally, maliciously or fraudulently, coverage should be denied; because, in such circumstances, he should not be able to avoid punishment by shifting the penalty to an insurance carrier. I doubt that such protection is ever afforded by insurance, because the companies who are experienced in such matters and who write the contracts, expressly exclude such conduct from the protection afforded by the policy.

For those who may be interested in the subject, attention is called to the following citations: American Fidelity & Casualty Co. v. Werfel, (1935) 230 Ala. 552, 162 So. 103; Georgia Casualty Co. v. Alden Mills (1930) 156 Miss. 853, 127 So. 555, 73 A.L.R. 408; Ohio Casualty Ins. Co. v. Welfare Finance Co. (8 Cir., 1934) 75 F.2d 58; Western Casualty & Surety Co. v. Aponaug Manufacturing Co., (5 Cir., 1952) 197 F.2d 673; General Casualty Co. of America v. Woodby, (6 Cir., 1956) 238 F.2d 452; Jernigan v. Allstate Insurance Co., (5 Cir., 1959) 269 F.2d 353; Jernigan v. Allstate Insurance Co., (5 Cir., 1959) 272 F.2d 857; Appleman, Insurance Law & Practice, 1962 Ed., Vol. 7, § 4312, p. 129; 17 Tex.Jur.2d § 173–188; I. H. P. Corp. v. 210 Central Park South Corp., 16 A.D.2d 461, 228 N.Y.S.2d 883.